UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

PLAINTIFF,

v.

CIVIL NO.

$16,894.92 SEIZED FROM ACCENTRA
CREDIT UNION CHECKING ACCOUNT
NO. 171645-20; AND $5,587.00 IN
U.S. CURRENCY,

DEFENDANTS.

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

The plaintiff, United States of America, through its attorneys Andrew M. Luger, United States Attorney for the District of Minnesota, and James S. Alexander, Assistant United States Attorney, in a civil cause of action for forfeiture, alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

## NATURE OF THE ACTION

1. This is an action to forfeit and condemn to the use and benefit of the United States of America $16,894.92 seized from Accentra Credit Union Checking Account No. 171645-20 and $5,587.00 in U.S. currency seized from 1100 South Broadway Avenue, Albert Lea, Minnesota for violations of 18 U.S.C. § 1956.

## THE DEFENDANTS *IN REM*

2. The Defendants *in rem* are $16,894.92 seized from Accentra Credit Union Checking Account No. 171645-20 on April 10, 2013, and $5,587.00 in U.S. currency seized from El Padrino grocery store, 1100 South Broadway Avenue, Albert Lea,

Minnesota, on April 10, 2013. The Defendants *in rem* are in the custody of the Internal Revenue Service.

## JURISDICTION AND VENUE

3. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the Defendant $16,894.92 seized from Accentra Credit Union Checking Account No. 171645-20 (the "171645-20 account"), and $5,587.00 in U.S. currency seized from 1100 South Broadway Avenue, Albert Lea, Minnesota (together, "the Defendant Properties"). This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

4. This Court has *in rem* jurisdiction over the Defendant Properties under 28 U.S.C. § 1355(b). Upon the filing of this Complaint, the Plaintiff requests that the Clerk of Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b)(i), which the Plaintiff will execute upon the Defendant Properties pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

5. Venue is proper in the District of Minnesota pursuant to 28 U.S.C. § 1355(b)(1) because some of the acts or omissions giving rise to the forfeiture occurred in this District, and pursuant to 28 U.S.C. § 1395 because the Defendant Properties are located in this District.

**FACTS**

A. <u>**The Fraud and Money Laundering Scheme**</u>

6. The United States has been investigating a series of financial crimes taking place in and around the Rochester, Minnesota area, including tax fraud, theft of government property, mail and bank fraud, and money laundering.

7. The investigation has revealed that an organization centered in and around Rochester, Minnesota has been, among other things, preparing and filing tax returns containing false information on behalf of others, including many illegal aliens.

8. In many cases, the nature of the relationships between the tax filer and the dependents claimed on the tax return are false or represented in a fictitious manner, which in turn results in a significantly larger tax refund due to exploitation of the Child Tax Credit, the Additional Child Tax Credit, and misrepresentations of filing status.

9. Many of the supposed tax filers are fictitious, and many tax returns are filed on behalf of persons with no connection to the United States.

10. The tax refunds requested through the false returns result in either the issuance of a check drawn on the U.S. Treasury or an electronic funds transfer from the U.S. Treasury.

11. In many instances, the refund checks are mailed to addresses controlled by the organization that prepared the false tax returns (the "Rochester Organization").

12. After receiving the checks, members of the Rochester Organization often forged the purported filer's signature to the refund check and cashed it, keeping the

majority of the proceeds of those checks without informing the supposed filer that a refund had been received or kept by the Rochester Organization, or misleading the filer about the amount of any refund that was received.

13. Between late February 2011 and April 10, 2013, the Rochester Organization utilized El Padrino, a Mexican grocery store in Albert Lea, Minnesota, owned by Ruben Hernandez-Ruiz ("Hernandez-Ruiz"), to cash tax refund checks.

14. Hernandez-Ruiz participated in the Rochester Organization's scheme by cashing the tax refund checks for the Rochester Organization, even though the checks were made out to third parties, in exchange for a percentage of the proceeds.

15. Most of the tax refund checks cashed by Hernandez-Ruiz were made out to purported taxpayers who were not present when a member of the Rochester Organization brought them to El Padrino to be cashed.

16. Hernandez-Ruiz did not require the payee on the checks to be present when he cashed them, even though he knew that their presence was required.

17. The taxpayer's endorsement signature on the tax refund checks was often forged, yet Hernandez-Ruiz repeatedly cashed the check and turned over the proceeds – minus his cut – to the Rochester Organization member who presented it.

18. Indeed, on occasion, the Rochester Organization member who tendered the third-party check to Hernandez-Ruiz signed it at El Padrino.

19. Moreover, the same person from the Rochester Organization made frequent, repeated trips to El Padrino to have Hernandez-Ruiz cash multiple third-party

tax refund checks for more than two years. Those checks represented not only the proceeds of tax fraud, but also proceeds of mail fraud, bank fraud and theft of government property.

20. From February 2011 through January 26, 2013, Hernandez-Ruiz made deposits totaling approximately $6,481,452.80 and corresponding cash withdrawals totaling $6,479,468.66 from the 171643-20 account. Many of those deposits were for checks that were part of the above-described scheme.

21. Indeed, law enforcement has identified 14 addresses associated with members of the Rochester Organization that received false refund checks by mail as part of the fraud scheme. Hernandez-Ruiz cashed at least 345 U.S. Treasury checks totaling $2,021,872.07 from those 14 addresses between February 2011 and January 2013 through the 171643-20 account, including 87 checks totaling $515,181.78 from a single address.

22. Stated otherwise, Hernandez-Ruiz used El Padrino's Accentra Credit Union checking account number 171643-20 as a vehicle for the Rochester Organization to launder the proceeds of their conspiracy to commit mail fraud, bank fraud and theft of government funds.

23. In exchange, Hernandez-Ruiz was paid between five and ten percent of the face value of each cashed check.

24. Although the courier for the Rochester Organization who delivered the checks to Hernandez-Ruiz often brought the cash proceeds back to the other Rochester

5

Organization members, Hernandez-Ruiz occasionally personally delivered the cash to the Rochester Organization at a restaurant called Tortilleria Jalisco, from which the Rochester Organization operated.

25. On April 10, 2013, law enforcement searched the Tortilleria Jalisco building.

26. During the course of that search, Hernandez-Ruiz arrived at the restaurant. During a consensual search of his vehicle, law enforcement located in excess of $55,000 in cash, which he was delivering to the Rochester Organization from treasury checks he had cashed.

## B. The Defendant Properties

27. As is stated above, more than $2,021,872.07 was deposited into the 171643-20 account from tax refund checks that were mailed to participants in the Rochester Organization.

28. Hernandez-Ruiz continued to use the 171643-20 account to cash the fraudulently derived checks, keeping a percentage of the proceeds, until April 10, 2013, when the government searched the El Padrino grocery store and seized the 171643-20 account.

29. Account records indicate that the amount of proceeds from the fraud scheme that was deposited into the 171643-20 account within the year prior to its seizure was far greater than the amount seized from the account. Indeed, in excess of $55,000 in

fraud scheme proceeds was deposited into the 171643-20 account shortly before it was seized on April 10, 2013.

30. The defendant $5,587.00 in U.S. currency was seized from an area behind the cash register at the El Padrino store when it was searched on April 10, 2013.

31. Notably, the defendant currency was not seized from the register, where the store's legitimate proceeds would be expected to be found.

32. Moreover, the El Padrino store generated far more funds through its check cashing service—*i.e.,* the 171643-20 account—than it generated through grocery or other sales, for which the store utilized a different account.

33. The $5,587.00 is approximately 10% of the value of the checks that Hernandez-Ruiz had cashed for the Rochester Conspiracy that day.

34. Thus, the defendant $5,587.00 in U.S. Currency appears to be traceable to money involved in Hernandez-Ruiz's money laundering activities, through the 171643-20 account.

## BASIS FOR FORFEITURE

35. The preceding paragraphs are realleged and incorporated by reference.

36. The Defendant Properties are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because they were involved in or are traceable to money involved in violations of 18 U.S.C. § 1956.

37.     In sum, the proceeds of a scheme to commit theft of government property (18 U.S.C. § 641), mail fraud (18 U.S.C. § 1341) and bank fraud (18 U.S.C. § 1344) were deposited into the 171643-20 account.

38.     Hernandez-Ruiz was aware that the checks he deposited into the account were proceeds of the above described violations, which are specified unlawful activities.

39.     By cashing checks that the Rochester Organization fraudulently obtained, many of which were fraudulently endorsed, Hernandez-Ruiz participated in financial transactions knowing that such transactions were designed to conceal the nature, ownership and control of the proceeds of the above-described specified unlawful activities.

40.     Accordingly, the Defendant Properties are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because they were involved in or are traceable to money involved in violations of 18 U.S.C. § 1956.

41.     To the extent it is necessary to do so, plaintiff intends to rely on the provisions of 18 U.S.C. § 984 to establish that the funds in the 171643-20 account are subject to forfeiture to the United States.

**CLAIM FOR RELIEF**

The plaintiff requests that the Court issue a warrant for the arrest and seizure of the Defendant Properties, that notice of this action be given to all persons who reasonably appear to be potential claimants of interests in the Defendant Properties, that the Defendant Properties be forfeited and condemned to the United States of America, that the plaintiff be awarded its costs and disbursements in this action, and for such other and further relief as this Court deems proper and just.

Dated:  April 3, 2014

ANDREW M. LUGER
United States Attorney

s/ James S. Alexander

BY: JAMES S. ALEXANDER
Assistant U.S. Attorney
Attorney ID No. 166145
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN  55415
(612) 664-5600
Jim.alexander@usdoj.gov

## VERIFICATION

I, Lucinda J. Schad, verify and declare under penalty of perjury as follows:

I am a Special Agent with the United States Internal Revenue Service, Criminal Investigation, and have held that position since 1993.

I have read the foregoing Verified Complaint For Forfeiture *In Rem* and know the contents thereof, and the matters contained in the Verified Complaint are true to my own knowledge, except that those matters not within my knowledge are alleged on information and belief, and I believe those matters to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information provided to me by other law enforcement agencies and officers, and information I have learned by reviewing reports prepared by other law enforcement agencies and officers, as well as my investigation of this case.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated:  April 3, 2014                                            s/ Lucinda J. Schad
                                                                 Lucinda J. Schad
                                                                 Special Agent
                                                                 IRS-CI